**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELLE PARSONS, on behalf of her minor child M.J. and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DANUBENET, INC. d/b/a DRIVING SCHOOL SOFTWARE and AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA<br><br>Defendants. | Case No.: 3:26-cv-3582<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Individually and on behalf of others similarly situated, Plaintiff Michelle Parsons brings this action on behalf of her minor child M.J. ("Plaintiff") against Defendants Danubenet, Inc. d/b/a Driving School Software ("DSS") and Automobile Club of Southern California ("ACSC", collectively "Defendants"). Plaintiff's allegations are based upon personal knowledge and acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support for the allegations set forth herein exists and will be revealed after a reasonable opportunity for discovery.

## I. INTRODUCTION

1. Every year millions of Americans have their valuable personal information stolen and sold online because of unauthorized data disclosures. Despite dire warnings about the severe

impact of unauthorized data disclosures on Americans of all economic strata, companies still fail to put adequate security measures in place to prevent the unauthorized disclosure of private data.

2. Defendant DSS is a provider of software solutions to driving schools. Defendants DSS provided such software to Defendant ACSC.

3. Defendant ACSC is an organization of motorist clubs throughout the United States.

4. Defendants collect, maintain, and store the sensitive Private Information of large numbers of the public as part of their ordinary course of business.

5. This is a class action for damages against Defendants for their failure to exercise reasonable care in securing and safeguarding highly sensitive consumer data in connection with a large data breach impacting an unknown number of individuals' personal information that occurred on or around August 19, 2025, (the "Data Breach") and impacted the highly sensitive data, including Plaintiff's and putative Class Members' (defined below), resulting in the unauthorized public release of highly sensitive information, including, but not limited to names and driver's license/permit numbers (collectively, the "Private Information"). On or around December 22, 2025, Defendant ACSC became aware of the Data Breach.

6. To the world of cybercriminals, Defendants' Private Information, including the data that was in possession at the time of the Data Breach, is extremely valuable. Stolen driver's licenses wreak financial havoc and identity theft issues for victims.

7. The security of Defendants' Private Information is, therefore, of the utmost importance. Defendants understood and appreciated the value of this Information by requesting it. yet chose to ignore the value of it by failing to invest in adequate data security measures that would protect Plaintiff and the Class from the unauthorized access to, and copying of, their

Private Information.

8. Defendants failed to take necessary steps to protect the Private Information of customers.

9. With their Private Information now in the hands of cybercriminals looking to profit from the theft, Plaintiff's and Class Members' Private Information is no longer secure, causing Plaintiff and Members of the Class to suffer (and continue to suffer) economic and non-economic harms, as well as a substantial and imminent risk of future economic and non-economic harms.

10. Defendants understand the serious nature of data breaches and the potential theft and misuse of Defendants' highly sensitive information resulting therefrom, and purports to address these issues.

11. Plaintiff and Class Members are no longer in possession of their Private Information, as it is no longer hidden but, instead, in the hands of cybercriminals who have already fraudulently misused such data.

12. While the exact reason(s) for the Data Breach remain unclear, there is no doubt that Defendants failed to adequately protect Plaintiff's and Class Members' Private Information and incorporate the tools necessary to keep such Private Information safe; such negligent failures resulted in the injuries alleged herein.

13. Had Plaintiff and the Class known that the Private Information they entrusted to Defendants in exchange for the goods offered would not be adequately protected, they would not have entrusted their valuable Private Information to Defendants in order to purchase goods and services.

14. Thus, on behalf of the Class of victims also impacted by the Data Breach

described herein, Plaintiff seek, under state common law and consumer protection statutes, to redress Defendants' misconduct.

## II. PARTIES

### A. Plaintiff Michelle Parsons, on behalf of her minor child M.J.

15. Plaintiff Michelle Parsons and her minor child M.J. reside in Canyon Country, California, and have done so for the time period relevant to this Data Breach.

16. Plaintiff Parsons' daughter enrolled in driver's education classes this past summer. As a routine part of this enrollment, Plaintiff's daughter provided her sensitive information.

17. Plaintiff's minor child provided her Private Information to the Defendants as a condition of receiving services from Defendants. She provided this information on the condition that it be maintained as confidential and with the understanding that Defendants would employ reasonable safeguards to protect his Private Information. If she had known that Defendants would not adequately protect his Private Information, she would not have entrusted Defendants with her Private Information or allowed Defendants to maintain this sensitive Private Information.

18. In order to receive driver's education services from Defendants, Plaintiff was required to provide her Private Information to Defendant.

19. At the time of the Data Breach, Defendants retained Plaintiff's daughter's Private Information in its system.

20. Plaintiff and her minor child are very careful about sharing sensitive Private Information. Such information is stored in a safe and secure location. Plaintiff and her daughter have never knowingly transmitted unencrypted sensitive Private Information over the internet or

any other unsecured source.

21. Plaintiff became aware of the Data Breach through a notice letter dated March 9, 2026, notifying her that her Private Information was potentially involved. On the same day she became aware of the Data Breach, Plaintiff immediately took steps to protect and vindicate her rights.

22. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach as well as checking her financial accounts for any indication of fraudulent activity, which may take years to detect. Plaintiff has spent significant time remedying the breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

23. Plaintiff suffered actual injury from having her Personal Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) diminution of value of her Private Information; and (vi) the continued and increased risk of fraud and identity theft.

24. Plaintiff has suffered an increase in spam and fraudulent messaging since the Data Breach.

25. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants did not immediately notify her of the incident.

26. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach.

As a result of the Data Breach, Plaintiff is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

27. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**B. Defendant Danubenet, Inc. a/k/a Driving School Solutions**

28. Defendants Danubenet, Inc. a/k/a Driving School Solutions is a corporation organized under the laws of New Jersey, with its principal place of business in Bridgewater, New Jersey.

**C. Defendant Automobile Club of Southern California**

29. Defendant Automobile Club of Southern California is a nonprofit corporation organized under the laws of the State of California with its principal office located in Costa Mesa, California.

## III. JURISDICTION AND VENUE

30. Jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d) because the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs, there are more than 100 class Members, and the matter is a class action in which any member of a class of Plaintiff is a citizen of a different state from any defendant.

31. This Court has personal jurisdiction over this action because a substantial part of the acts, events, and omissions giving rise to the claims herein occurred in this District. Defendant Danubenet, Inc., is headquartered in this District and Defendant ACSC conducts substantial business in this District.

32. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants have purposefully engaged in activities, including transacting business in this District, and have engaged in the acts and omissions alleged herein, in this District.

## IV. FACTUAL ALLEGATIONS

### A. The Data Breach

33. On or around March 9, 2026, Defendants issued notice of the data breach via U.S. mail.

34. During the delay between the data breach in August of 2025 and notification in March of 2026, the risks and damages to Plaintiff and Class Members were only increasing. A prompt and proper response from Defendants, including full disclosure to all Defendants' customers involved in the Data Breach of the extent of the Breach and the specific information impacted as a result of the Breach, as well as the risks users faced, would have mitigated those risks and resulting damages substantially, as users would have been able to change their impacted drivers' information.

35. Thus, Defendants' disclosure, in addition to being unreasonably delayed, has been woefully inadequate and directly contributed to the damages suffered by Plaintiff and the Class thus far, and Defendants has yet to offer any remedy to assist Plaintiff and Class Members through the aftermath of its Breach.

36. Defendants not only failed to adequately disclose the Data Breach to impacted parties, but it also failed to explain the extent of the Data Breach, where the information was lost, and to whom it may have been lost.

### B. Defendants Violated the FTC Act and Failed to Observe Reasonable and Adequate Data Security Measures

37. Defendants were prohibited by the Federal Trade Commission Act, 15 U.S.C. §

45 (the "FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

38. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[1]

39. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[2] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

40. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[3]

41. The FTC has brought enforcement actions against businesses for failing to

[1] *Start With Security: A Guide for Business*, FED. TRADE. COMM'N (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf [hereinafter *Start with Security*].
[2] *Protecting Personal Information: A Guide for Business*, FED. TRADE. COMM'N (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf- 0136_proteting-personal-information.pdf.
[3] *Start with Security*, *supra* note 32.

adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42. Defendants were aware (or should have been aware), at all times, of the obligation to protect the Private Information of Plaintiff and Class Members because of its position as possessor and controller of such data. Defendants were also aware of the significant repercussions that would result from its failure to do so.

43. Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligation to keep such information confidential and secure from unauthorized access.

44. Defendants did not follow industry standard security or data minimization policies.

45. Further, Defendants have been on notice for years that Plaintiff's and Class Members' Private Information was a target for malicious actors due to, among other reasons, the high value to these bad actors of the Private Information stored in Defendants' system. Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate administrative and data security measures to protect Plaintiff's and Class Members' Private Information from unauthorized access that Defendants should have anticipated and guarded against.

46. Stolen driver's licenses can be used (alone or in combination with other information) by malicious actors to accomplish the following:

• Apply for credit cards

• Apply for financial loans (especially student loans)

• Open bank accounts

• Obtain or create fake driver's licenses

    o Given to police for tickets

    o Provided to accident victims

    o Collect government unemployment benefits

    o Create and sell underage fake IDs

• Replace/access account information on:

    o LinkedIn

    o Facebook/Meta

    o WhatsApp

    o Instagram

• Obtain a mobile phone

• Dispute or prove a SIM swap

• Redirect U.S. mail

• Apply for unemployment benefits

• Undocumented aliens may use them as a method to gain access to the U.S., and claim a lost or stolen passport

• Create a fake license as a baseline to obtain a Commercial Driver's License

• File tax returns or gain access to filed tax returns

• Engage in phishing and other social engineering scams

47. Almost half of data breaches globally are caused by internal errors relating to

either human mismanagement of sensitive information or system errors.[4] Cybersecurity firm Proofpoint reports that since 2020, there has been an increase of internal threats through the misuse of security credentials or the negligent release of sensitive information.[5] To mitigate these threats, Proofpoint recommends that firms take the time to train their employees about the risks of such errors.[6]

48. As explained by the FBI, "[p]revention is the most effective defense against ransomware and it is critical to take precaution for protection."[7]

49. To prevent and detect unauthorized access to its system, Defendants could have, and should have, implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply the latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privilege credentials;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs

---

[4] COST OF A DATA BREACH REPORT, *supra* note 8, at 30.
[5] *The Human Factor 2021*, PROOFPOINT (July 27, 2021), https://www.proofpoint.com/sites/default/files/threat-reports/pfpt-us-tr-human-factor-report.pdf.
[6] *Id.*
[7] *See How to Protect Your Networks from RANSOMWARE*, FBI (2016) https ://www. fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

- Analyze logon events

**<u>Harden infrastructure</u>**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[8]

50. These are basic, common-sense security measures that every business, not only those who handle sensitive information, should be taking. Defendant, with the highly sensitive personal information in its possession and control, should be doing even more. By adequately taking these common-sense solutions, Defendants could have prevented this Data Breach from occurring.

51. Charged with handling sensitive Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information that was entrusted to them and of the foreseeable consequences of a lapse in their data security. This includes the significant costs that would be imposed on Defendants' users because of a breach. Defendants failed, however, to take adequate administrative cybersecurity measures to prevent the Data Breach from occurring.

52. The Private Information was maintained in a condition vulnerable to misuse. The mechanism of the unauthorized access and the potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take reasonable steps necessary to secure the Private Information from those risks left the Private Information in a vulnerable position.

[8] *See Human-operated ransomware attacks: A preventable disaster*, MICROSOFT (Mar. 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-apreventable-disaster/.

53. As evidenced by these failures by Defendants to comply with their legal obligations established by the FTC Act, as well as their failures to maintain the reasonable and adequate data security measures set forth herein, Defendants failed to properly safeguard Plaintiff's and Class Members' Private Information, allowing hackers to access and subsequently misuse it.

54. But for Defendants' unlawful conduct, hackers would not have accessed Plaintiff's and the putative Class Members' Private Information. Defendants' unlawful conduct has directly and proximately resulted in widespread attacks against Plaintiff and the Class.

55. National credit reporting company blogger, Sue Poremba, emphasized the value of driver's license to thieves and cautioned:

> If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license is one of the most important pieces to keep safe from thieves.

56. In fact, according to CPO Magazine, which specializes in news, insights, and resources for data protection, privacy, and cyber security professionals, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation." Tim Sadler, CEO of email security firm Tessian, points out why this is not the case and why these numbers are very much sought after by cyber criminals:

> It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks. . . . bad actors may be using these driver's license numbers to fraudulently apply for unemployment benefits in someone else's name, a scam proving especially lucrative for hackers as unemployment numbers continue to soar. . . . In other cases, a scam using these driver's license numbers

could look like an email that impersonates the DMV, requesting the person verify their driver's license number, car registration or insurance information, and then inserting a malicious link or attachment into the email.

57. Drivers' license numbers have been taken from auto–insurance providers by hackers in other circumstances, including Geico, Noblr, American Family, USAA, and Midvale all in 2021, indicating both that this specific form of PI is in high demand and also that Defendants knew or had reason to know that their security practices were of particular importance to safeguard consumer data.[9]

58. Plaintiff and Class Members Private Information is now in the hands of cybercriminals. This access has resulted in, at minimum, an invasion of Plaintiff's and Class Members' privacy and can lead to even greater damages.

59. The actions described herein have resulted in emotional distress for Plaintiff and the Class. Plaintiff and the Class have lost all security and privacy over their driver's license number and other information.

60. Plaintiff and the Class are anxious and alert as they are at a substantial risk of being bombarded with phishing emails and other scams, in addition to the disclosure they have already suffered. Plaintiff is also suffering from the mental and emotional distress associated with such insecurity and uncertainty caused by the Data. In addition to financial loss, mental anguish, and risk of future harm, Class Members and Plaintiff continue to suffer from stress and anxiety as a result of the Data Breach.

[9] See United States Securities and Exchange Commission Form 8-K for INSU Acquisition Corp. II (Feb. 1, 2021), https://www.sec.gov/Archives/edgar/data/1819035/000121390021005784/ea134248-8k_insuacquis2.htm?=1819035-01022021 (accessed Apr. 27, 2021) (announcing a merger with auto-insurance company MetroMile, Inc., an auto-insurer, which announced a drivers' license number Data Disclosure on January 19, 2021); Ron Lieber, How Identity Thieves Took My Wife for a Ride, N.Y. TIMES (Apr. 27, 2021) (describing a scam involving drivers' license numbers and Progressive Insurance).

61. As long as Plaintiff's and Class Members' Private Information is in the hands of cybercriminals, they will remain at substantial, imminent risk of continued misuse of their Private Information.

**C. Damages to Plaintiff and the Class**

62. Plaintiff has suffered damages from the Data Breach as set forth herein.

63. Defendants offered insufficient resolution, failing to even offer any kind of complimentary credit monitoring to victims.

64. If Defendants had disclosed the full extent of the Data Breach in August of 2025 instead of waiting over a year to do so, Plaintiff and Class Members would have been on heightened alert and changed their passwords, thus avoiding the thefts that ensued.

65. As to other forms of damages, Plaintiff's and Class Members' Private Information has been compromised and they have lost significant time having to sort through and change several accounts and passwords, and in addition, Plaintiff and Class Members have incurred the following types of damages: the lost value of their privacy; not receiving the benefit of their bargain with Defendant; losing the difference in the value between the goods and services *with* adequate data security that Defendants promised and the goods and services actually received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, that required to change multiple account passwords, monitor accounts, and investigate how to maintain privacy from loss of driver's license information.

66. Additionally, Plaintiff and Class Members have been put at increased, substantial risk of future fraud and/or misuse of their Private Information, which may take years to manifest, discover, and detect, and may not occur until an attempt to purchase another insurance policy or

vehicle.

67. Had Plaintiff been made aware of Defendants' lax data security practices, unwillingness to promptly and completely disclose data breaches such as this one, and failure to provide timely notice and mitigatory assistance, Plaintiff would not have agreed to allow his Private Information to be held by Defendant.

68. Defendants do not appear to be taking any measures to assist Plaintiff and Class Members. None of the recommendations described in the Data Breach Notification required Defendants to expend any effort to protect Plaintiff's and Class Members' Private Information.

### D. The Monetary Value of Privacy Protections and Private Information

69. The fact that Plaintiff's and Class Members' Private Information was inadvertently disclosed to bad actors that should not have had access to it demonstrates the monetary value of the Private Information.

70. At all relevant times, Defendants understood the Private Information they collect from their users is highly sensitive and of significant property value.

71. An active and robust legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to insurance companies.

72. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. This transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property.

## V. CLASS ALLEGATIONS

73. Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 and seeks certification of the following nationwide Class (referred to herein as the "Class"):

> All persons whose personal information was accessed, compromised, copied, stolen, and/or exposed as a result of the Defendants' (and any of Defendants' affiliates) Data Breach on or around August of 2025.

74. Plaintiff proposes the following subclass (referred to herein as the "Subclass"):

> All citizens of California whose personal information was accessed, compromised, copied, stolen, and/or exposed as a result of the Defendants' (and any of Defendants' affiliates) Data Breach on or around August of 2025.

75. Excluded from the Classes are Defendants, their officers and directors, and Members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

76. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

77. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The Members of the Class are so numerous that joinder of all Class Members would be impracticable. Upon information and belief, the Class numbers in the thousands. Moreover, the Class is composed of an easily ascertainable set of Defendants customers who were thus impacted by the Data Breach. The precise number of Class Members can be further confirmed through discovery, which includes Defendants' records. The disposition of Plaintiff's and Class Members' claims through a class action will benefit the parties and this Court.

78. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Members of the Class and

predominate over questions affecting only individual Members of the Class. Such common questions of law or fact include, *inter alia*:

- Whether Defendants' data security systems and/or protocol prior to and during the Data Breach complied with applicable data security laws and regulations;
- Whether Defendants' data security systems and/or protocol prior to and during the Data Breach were consistent with industry standards and best practices;
- Whether Defendants properly implemented their purported security measures to protect Plaintiff's and Class Members' Private Information from unauthorized capture, dissemination, and misuse;
- Whether Defendants took reasonable measures to determine the extent of the Data Breach after it first learned of same;
- Whether Defendants disclosed Plaintiff's and Class Members' Private Information in violation of the understanding that the Private Information was being disclosed in confidence and should be maintained;
- Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class Members' Private Information;
- Whether Defendants were negligent in failing to properly secure and protect Plaintiff's and the Class's Private Information;
- Whether Defendants were unjustly enriched by their actions; and
- Whether Plaintiff and Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

79. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and other Members of the Class. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

80. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are

typical of the claims of the other Members of the Class because, among other things, all Class Members were similarly injured and sustained similar monetary and economic injuries as a result of Defendants' uniform misconduct described herein and were thus all subject to the Data Breach alleged herein. Further, there are no defenses available to Defendants that are unique to Plaintiff.

81. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff are an adequate representative of the Class because their interests do not conflict with the interests of the Class they seek to represent, they retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and their counsel.

82. **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

83. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of

scale, and comprehensive supervision by a single court.

84. Class certification is also appropriate under Rules 23(b)(1) and/or (b)(2) because:

- The prosecution of separate actions by the individual Members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendant;
- The prosecution of separate actions by individual Class Members would create a risk of adjudication that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and
- Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Members of the Class as a whole.

85. Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate multiple subclasses pursuant to Fed. R. Civ. P. 23(c)(4).

86. No unusual difficulties are likely to be encountered in the management of this action as a class action.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

87. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

88. Upon Defendants' acceptance and storage of Plaintiff's and Class Members' Private Information in its system, Defendants undertook and owed a duty to Plaintiff and the Class to exercise reasonable care to secure and safeguard that Information and to use commercially reasonable methods to do so. Defendants knew that the Private Information was highly sensitive and confidential and should be protected as such.

89. Defendants owed a duty of care to provide security consistent with federal law and industry standards, to ensure their systems protected Class Members Private Information; and not to subject Plaintiff's and other Class Members' Private Information to an unreasonable risk of exposure and theft because Plaintiff and other Class Members were foreseeable and probable victims of any inadequate data security practices.

90. Plaintiff and Class Members entrusted Defendants with their Private Information. Defendants had an obligation to safeguard their information and was in a position to protect against the harm suffered by Plaintiff and Members of the Class as a result of the Data Breach.

91. Defendants owed numerous duties to Plaintiff and the Class, including the following:

- to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting Private Information in its possession;
- to protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and
- to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

92. Defendants also breached their duty to Plaintiff and other Class Members to adequately protect and safeguard Private Information by disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information to unknown parties. Furthering its dilatory practices, Defendants failed to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of compromise and misuse, which permitted malicious bad actors to gather Plaintiff's and Class

Members' Private Information and intentionally disclose it to others and/or misuse it without consent, resulting in the harms alleged herein.

93. Defendants knew, or should have known, of the risks inherent in collecting and storing Plaintiff's and Class Members' Private Information and the importance of adequate data security.

94. Defendants knew, or should have known, that its data systems and privacy protocols and procedures would not adequately safeguard Plaintiff's and Class Members' Private Information.

95. Defendants breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems, networks, and/or data security practices to safeguard Plaintiff's and Class Members' Private Information.

96. Because Defendants knew that the theft of the highly sensitive data stored in its systems would damage millions of individuals and businesses, including Plaintiff and Class Members, Defendants had a duty to implement sufficient privacy practices and procedures and adequately protect its data systems and the Private Information contained therein.

97. Defendants' duty of care to use reasonable data security measures arose as a result of the special relationship that existed between Defendants and Plaintiff and Class Members, which is recognized by laws and regulations, including but not limited to, common law. Defendants were in a position to ensure that its systems and protocols were sufficient to protect against the foreseeable risk of harm to Class Members from the compromise of the data with which it was entrusted.

98. In addition, Defendants had a duty to employ reasonable data security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or

affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable data security measures to protect confidential data.

99. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described herein, but also because Defendants were bound by industry standards to do more to protect the confidential data that was compromised as a result of the Data Breach.

100. Defendants' own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their Private Information. Defendants' misconduct included failing to (1) secure Plaintiff's and Class Members' Private Information; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

101. Defendants breached its duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;
- Failing to adequately monitor the security of its networks and systems;
- Allowing unauthorized access to Class Members' Private Information;
- Encouraging exposure of Class Members' Private Information by cross-referencing with third-parties as a business model;
- Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

- Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for fraud and other damages.

102. Through Defendants' acts and omissions described in this Complaint, including its failure to provide adequate data security and protect Plaintiff's and Class Members' Private Information from being foreseeably accessed, stolen, disseminated, and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' Private Information during the time it was within Defendants' possession and control.

103. Defendants' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to, failing to adequately protect the Private Information, and failing to provide Plaintiff and Class Members with timely notice that their sensitive Private Information had been compromised.

104. Neither Plaintiff nor Class Members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint. Any and all actions taken by Plaintiff and Class Members which Defendants may argue contributed to the misuse of the compromised Private Information were reasonable under the circumstances.

105. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered damages as alleged herein.

106. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen its data security systems and monitoring procedures; and (ii) submit to future bi-annual audits of those systems and monitoring procedures.

## COUNT II
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiff and the Class Against Defendant ACSC)

107. Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

108. Plaintiff brings this claim alternatively to his claim for breach of contract.

109. Through its course of conduct, Defendant ACSC entered into implied contracts with Plaintiff and Class Members for the provision of password and identity management services, as well as implied contracts for Defendant ACSC to implement data security practices adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

110. Specifically, Plaintiff entered into valid and enforceable implied contracts with Defendant ACSC when they first began using Defendants' services.

111. The valid and enforceable implied contracts to provide confidential services that Plaintiff and Class Members entered into with Defendant ACSC include Defendant ACSC's promise to protect nonpublic Private Information entrusted to it.

112. When Plaintiff and Class Members provided their Private Information to Defendants in exchange for Defendant ACSC's services, they entered into implied contracts with Defendant ACSC pursuant to which Defendants agreed to reasonably protect such information.

113. Defendant ACSC solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant ACSC's regular business practices. Plaintiff and Class Members accepted Defendant ACSC's offer and provided their Private Information to Defendant.

114. By entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant ACSC's data security practices complied with relevant laws and regulations and were consistent with industry standards.

115. Under these implied contracts, Defendant ACSC promised and was obligated to: (a) protect Class Members drivers' license and permit information (b) provide services inclusive of protecting Private Information to Plaintiff's and Class Members; and (c) protect Plaintiff's and the Class Members' Private Information provided to obtain such benefits of such services. In exchange, Plaintiff and Members of the Class agreed to turn over their Private Information to Defendant.

116. Both the provision of services and the protection of Plaintiff's and Class Members' Private Information were material aspects of these implied contracts.

117. The implied contracts for the provision of services, including but not limited to, the maintenance of the privacy of Plaintiff's and Class Members' Private Information, are also acknowledged, memorialized, and embodied in Defendant ACSC's Terms of Service for personal users.

118. Defendant ACSC express representations, including, but not limited to, the express representations found in its Terms of Service, memorialize and embody the implied contractual obligations requiring Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff and Class Members, and to protect the privacy of Plaintiff's and Class Members' Private Information.

119. Customers of auto clubs value their privacy and the ability to keep their Private Information associated with obtaining such services. Plaintiff and Class Members would not have entrusted their Private Information to Defendant ACSC and entered into these implied contracts with Defendant without an understanding that their Private Information would be safeguarded and protected; nor would they have entrusted their Private Information to Defendant in the absence of the implied promise by Defendants to monitor the Private Information and to

ensure that it adopted reasonable administrative and data security measures.

120. Plaintiff and Class Members agreed and provided their Private Information to Defendant ACSC in exchange for, among other things, the protection of their Private Information.

121. Plaintiff and Class Members performed their obligations under the contract when they made payment and turned over their Private Information to Defendant ACSC.

122. Defendant ACSC materially breached its contractual obligation to protect the nonpublic Private Information it gathered when the Private Information was compromised and subsequently misused as a result of the Data Breach.

123. Defendant ACSC materially breached the terms of these implied contracts, including, but not limited to, the terms stated in the relevant Privacy Policy. Defendant did not maintain the privacy of Plaintiff's and Class Members' Private Information as evidenced by its recent notices of the Data Breach. Specifically, Defendant did not comply with industry standards, standards of conduct embodied in statutes like Section 5 of the FTCA, or otherwise protect Plaintiff's and Class Members' Private Information as set forth above.

124. The Data Breach was a reasonably foreseeable consequence of Defendant ACSC's data security failures in breach of these contracts.

125. As a result of Defendant ACSC's failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargain with Defendant, and instead received goods and services that were of a diminished value to that described in the contracts. Plaintiff and Class Members therefore were damaged in an amount at least equal to the difference in the value of the insurance accounts *with* data security protection that Defendant agreed to provide and the services Defendant actually provided.

126. Had Defendant disclosed their administrative and data security measures were inadequate or that it did not adhere to industry-standard security measures, neither Plaintiff, Class Members, nor any reasonable person would have utilized services from Defendant.

127. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation, the release and disclosure of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, out of pocket expenses, and the loss of the benefit of the bargain they struck with Defendant.

128. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

129. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant ACSC to, *e.g.,* strengthen their data security systems and monitoring procedures, and immediately take on the burden of long-term, adequate credit monitoring to all Class Members.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against Defendant ACSC)**

130. Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

131. Plaintiff and Class Members conferred a monetary benefit on Defendant ACSC. Specifically, they provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and were entitled to have Defendant protect their Private Information with adequate data security.

132. Defendant knew and appreciated that Plaintiff and Class Members conferred a benefit on them and accepted and retained that benefit. Defendant profited from Plaintiff's and Class Members' providing their Private Information for Defendants' business purposes.

133. Defendant ACSC failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not provide full compensation for the benefit that Plaintiff's and Class Members' Private Information provided.

134. Defendant ACSC acquired the Private Information through inequitable means as it failed to disclose the inadequate security practices alleged herein.

135. If Plaintiff and Class Members knew that Defendant ACSC did not have data security safeguards in place that were adequate to secure their Private Information from unauthorized access, they would not have used Defendant ACSC's services.

136. Under the circumstances, it would be unjust for Defendant ACSC to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

137. Defendant ACSC should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds in the amount of the benefits that it unjustly received from them by way of possessing and controlling Plaintiff's and Class Members' Private Information.

## COUNT IV
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## (On Behalf of Plaintiff and the Class Against Defendant DSS)

138. Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

139. Defendant DSS entered into uniform written contracts with its clients, including ACSC, to provide an integrated software platform and related services in connection with

customer relationship management and related functions.

140. Pursuant to these contracts, Defendant DSS' clients, including ACSC, agreed to provide DSS with compensation and Plaintiff's and Class Members' Private Information, and DSS received Plaintiff's and Class Members' Private Information from DSS' clients in the course of providing its software platform and related services.

141. In exchange for payment and Plaintiff and Class Members' Private Information, Defendant DSS promised to provide its software services to ACSC.

142. As a material term of these contracts, each Defendant promised the other to implement specific, adequate, and industry-standard data security measures to safeguard Plaintiff's and Class Members' Private Information from unauthorized disclosure, to maintain the Private Information's confidentiality and to timely notify Plaintiff and Class Members of the Data Breach.

143. Each Defendant was obliged to use adequate data security measures to maintain the privacy of Plaintiff and Class Members' Private Information. Plaintiff and Class Members are the intended beneficiaries of the contracts between Defendants.

144. These contracts between Defendant DSS and its clients were made to facilitate the transactions between DSS' clients and their customers, to integrate Plaintiff's and Class Members' data, and to store and manage Plaintiff's and Class Members' Private Information, and to sufficiently safeguard that data with technologically sound measures, such that they were made expressly for the benefit of Plaintiff and Class Members as the intended third-party beneficiaries.

145. Defendant DSS knew Plaintiff and Class Members were involved and were meant to benefit from the transactions that were subject to these contracts.

146. Defendant DSS knew that if it breached its contractual obligation to adequately safeguard its clients' customers' Private Information, Plaintiff and Class Members would be harmed.

147. Defendant DSS breached these contracts with ACSC and its other clients, by, among other acts and omissions, failing to use reasonable data security measures or implement adequate protocols and employe training sufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

148. As a direct and proximate result of Defendants' breaches of these contracts, Plaintiff and Class Members have suffered and will continue to suffer injuries as set forth herein, and are entitled to damages sufficient to compensate for the losses they sustained as a direct result thereof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant, as follows:

A. For an Order certifying this action as a class action and appointing Plaintiff and their counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to Defendants' lax data security practices, procedures, networks, and systems that led to the unauthorized disclosure and subsequent misuse of Plaintiff's and Class Members' Private Information, and from failing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C. For equitable relief compelling Defendants to utilize appropriate methods and

policies with respect to consumer data collection, storage, and safety, and to disclose with specificity all types of Private Information compromised during the Data Breach;

D. For equitable relief requiring restitution and disgorgement of the benefits wrongfully retained by Defendants as a result of its wrongful conduct;

E. For an award of damages, compensatory damages and/or restitution or disgorgement, in an amount to be determined, as allowable by law;

F. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

G. Pre- and post-judgment interest on any amounts awarded; and

H. Such other and further relief as this court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Date: April 3, 2026

Respectfully Submitted,

**GOODLEY McCARTHY LLC**

/s/ James E. Goodley
James E. Goodley
NJ Attorney ID: 048572013
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541
james@gmlaborlaw.com

Nicholas A. Migliaccio*
Jason S. Rathod*
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC 20002
Phone: 202-470-520
Fax: 202-800-2730

nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Counsel for Plaintiff and the Putative Class*

*To apply for admission *pro hac vice*